Good afternoon, Your Honors. Good afternoon. So my name is Fabian Serrato, and I represent the petitioner in this case. Your Honors, as you've probably read in the brief, I think matter of Lazada has to go at this point. In this case, what I'm requesting is that that onerous type of requirement What are you saying? Are you saying that it's not good law anymore? Not good law anymore, correct. What's your basis for that? Every other practice of law, criminal, civil, doesn't matter in California, they have a way if an attorney messes up on a case, they have a way to remedy that. And you don't necessarily have to file a bar complaint. So let's just assume we disagree with you about that. Has Lazada been satisfied in this case? It has not been satisfied in this case because, as the court has cited before, when error is noted from the record, it's not necessary to complete Lazada requirements. Well, you're in a little uncomfortable position because you're the one that committed the IAC, and here you are sitting in front of us. I am. All right. And that what your clients did not report you to the state bar. And it makes me uncomfortable to think that maybe you told them, don't report me to the state bar and I'll fix all of this. No. And so that not reporting them to the state bar is makes you not you. It's not complied with Lazada. And so why didn't you self-report? It sounds to me as you stand here before us that you are acknowledging that you committed malpractice, that you were ineffective. I did. And you understand that your failure to have filed a brief, not just in this case but in other cases, creates a significant problem for your clients. Absolutely. And so I'm very unclear as to why you haven't taken appropriate remedial measures. Well, I have, Your Honor. In this case, what I've done is I told them, look, I messed up. I told my clients I messed up, and let me try and fix this for you without charge. Well, maybe I want to put something in the record, though, at this time, because you're here for two cases today. I am. The only two cases that we have for argument. It's not the same representative of the government in each case. So we'll be hearing from both of you. And, of course, it's not exactly factually the same. But you're telling the same story. You didn't file briefs in 24-1033, which we're arguing right now. But then you're going to get up again, and you're still going to look like Mr. Serrato with the mask on. All right? And then you're going to tell me again and this panel that you committed malpractice, and that's 24-1309. Right. So it isn't, as Judge Desai said, it's not, oops, only did it one time, just today. It's, oops, I did it at least twice. Twice for sure, yes. And heaven knows how many times. No, just twice, Your Honor. Well, pardon me if I say I'm not sure. Yeah, no, Your Honor. And I'll tell you in this case, they switched to sending paper files to sending e-mails when the brief was due. And some of those e-mails got lost along the way. The explanation really doesn't matter. What's concerning to me is that you understand you're invoking Lozado as a potential basis for reopening. And there are clearly factors. I think, you know, we might disagree, others may disagree about exactly which factors need to be satisfied at what, you know, level of stringency. But in any event, you know that one of the things that you ought to do is to remove yourself from this case so that the appropriate factors, the steps including a bar complaint may be filed or a self-report may be filed. And that's the part I don't understand. Is it just because you really don't think Lozado is good law anymore, and so therefore you're not trying to satisfy the factors, even if that's in the best interest of your client? Well, Your Honor, in this case, I thought the best interest of my client was that I would try to remedy this without charge. You know, I screwed up. I'm sorry. Let me try and fix this. That wasn't my intention. Well, but here's the other thing, though. You don't even come here and tell me what the prejudice would be. And so you could have – you didn't file briefs, okay. But from my perspective, and I'm only speaking for myself right now because we conference about these cases after and we make our decisions after oral argument, there are cases out there that say you still have the burden to show prejudice. And I'm having a hard time looking at this. Well, I feel sorry for your client that you didn't do this, but if there's absolutely no way that your client can get any relief, I'm not going to give your client relief just because you made a mistake if there is no – what is the path? You know, you can make a mistake, but I don't see any path for any relief for your client. Yes, Your Honor. And you don't even talk about prejudice here, and the court does. And we – in this case, we did explain that, you know, her asylum case was the prejudice was – the court wasn't able to evaluate her asylum claim. And I tried to lay it out in my brief, the claim that she had for asylum. So, you know – Counsel, what are your client's plausible grounds for relief? Because I'm trying to ask basically the same question Judge Callahan just asked. But in a nicer way. Thank you. What are the plausible grounds for relief for your client? Well, I was arguing that she would be eligible for asylum, withholding, and CAD. And so the relief – On what basis? On the basis of that she was abused by her husband, her ex-husband. And so because of that, she was singled out as a woman unable to leave the relationship. So that was the basis of her claim. Counsel, are you charging your client for services? Absolutely not. I promise you, whatever it is, I am not charging my client. As a matter of fact, I paid for all the filing fees, everything out of my pocket. And I refunded her her money for the BIA appeal because I screwed up. I'm still not seeing how she gets relief. Those issues were litigated. And, you know, I think the court found no nexus or there were – did she report any of these things? Well, she did not – Because there was a little convoluted because she went to – they were in Spain. Then she went back to Central America and then came to the United States. Right, correct, Your Honor. So on CAD, was she – what showing do you have under CAD? Well, just – I saw nothing. Yeah, under CAD, you're right, Your Honor, probably nothing there under CAD. No one – and under – what's her persecution or what has – didn't the court find no nexus? It did find no nexus, Your Honor, but in this case we were – Is nexus a factor for seeking CAD relief? No, it's not a factor for seeking CAD relief. Okay, so I'm not – explain to me how – where you see that the BIA made a finding with respect to no prejudice on the CAD claim because what I'm looking at AR4 at the very last paragraph here, what appears to me – and, of course, we have to get past Lozado to even get to the prejudice analysis here. But assuming we're at the prejudice analysis, it seems to me that the BIA did address both the asylum and withholding of removal claims by addressing the fact that there was no established nexus here. But what I don't see is any analysis with respect to the CAD claim. Yes, Your Honor, in this case what we argued was that because the husband is a private actor, the government is failing to protect her right in her country, so that's why we were alleging that she is eligible for CAD as well because she had incidents of domestic violence and she was never protected. Did she ever report it? No. Okay. Any other questions? Okay. We'll let you reserve the balance for rebuttal. Thank you, Your Honor. Do you want to reserve that for rebuttal? Please, Your Honor. Thank you. Okay. Thanks. Thank you. All right. We're ready for the government. Good afternoon. Good afternoon. May it please the Court. Richard Zampanian on behalf of the Attorney General. The Board did not abuse its discretion denying the motion to reopen this case. At the outset, the Board recognized there was a lack of prejudice apart from anything else in terms of that petitioner. The Board did not abuse its discretion in determining that there was no prejudice. So I know when discussing prejudice, and I think that Judge Desai touched on this, the BIA opinion can be read, one way you could read it, to mean that it considered the issue only with respect to the IJ's nexus determination, which would mean petitioners cannot show prejudice for their asylum or withholding claims. Did the BIA reach the issue of prejudice for the petitioner's CAT claim? We think they did so far as the claim itself fell short. But what's important is that this was a Grava-style claim made below. What you're really arguing is more of a harmless error analysis, right? You're not saying that the BIA, because I would like you to point me to where in this decision the BIA addressed prejudice with respect to the CAT claim, but I think maybe what you're saying is a little different, which is at the core of the claim, there's nothing there that likely, if it were to go back, she would not be able to obtain relief because she didn't complain about the government acquiescence, et cetera. That's where you touched on the futility section of the red brief. Okay. But I guess as a larger point, I think what we're saying is when the board looks at the case, there was no glaring error jumping off the page saying, well, wait a second, we see something that's gone wrong here. Because this was a Grava-style claim, meaning the petitioner didn't make a – there was no case in chief, if you will. She relied on her declaration. And then, in fact, actually I think the only question on direct was the immigration judge asking her how old she was, and then it moved directly into Cross because her claim was built out by the actual affidavit under Grava. There was a couple – I think there might have been only one question on redirect, in fact. Can we presume a finding if one isn't made? Even if we were to agree with you that nothing jumps out as being potentially the basis for a successful claim, if there's no finding by the BIA with respect to prejudice on the CAT claim, what do we do with that because we can't presume a finding that doesn't exist? Well, so of course for sure there's a futility argument there, but also the BIA reacted to what the claim was made below. So in other words, when petitioners – for instance, some petitioners may not even check the box for CAT. Now, in this case, they did, but they just didn't advance a claim. You have to actually say something in support of your claim to actually make a claim out for the board to review and decide if there was a mistake made in the first place. So when the – in fact, this is at pages 25 to 27 of the red brief, which addresses to Your Honor's point about if there is harmless error, what good does it do because we're bouncing the case back and forth. But when the applicant applies for, in this case, foreign protection, CAT, they need to at least advance something to say this is the government entity that will harm me or this is the willful blindness that the government will engage in to harm me. In this case, the government arrested the ex-husband in Spain. Part of this no prejudice finding was the board recognizing this is an applicant who fears, as Your Honor noted, returning to Central America because of the acts of a person in Spain who then sent her a threat referencing another person in Spain that she looked up on Facebook and said, well, my fear is in Spain. I no longer feel comfortable being in El Salvador, so I'm going to go ahead and go to the United States. All in there about government – if the husband was, for instance, a police officer or if the husband had made some sort of government action take place or – it's something to advance a CAT claim, but he didn't. The claim here was based on the husband. There was not even a suggestion the husband was going to somehow direct government action or deliberate government inaction. In this case, the government took action, the government of Spain, by the way. And her fear is – I'm sorry, because her fear is the government of El Salvador, but what we have is the government of Spain that actually took action. So I would also – So but the abuse that she's complaining about happened in Spain. All of it, Your Honor. Not in El Salvador. That's correct. So at the first step, I heard that – I'm not sure exactly what – I'm going to assume that Lozada is still good law. I haven't heard that to be overruled. But that being said, he said it's out the window, and there are some cases that, albeit around, that it talks about, if you don't file a brief, an appellate brief, that that is incompetence per se. Does that melt away? Does that eliminate the prejudice prong? It does not. In fact, Hernandez-Ortiz, which the Board cited and has also cited in the red brief, points out if we can actually understand the substance of the claim that was made. In other words, the applicant was not reasonably precluded from making the claim, in this case, which we understand the claim to be. We understand the claim all too well because it was done in a written affidavit form because it was a Grava-style claim. So we understand the claim that was made here. We'd also – I would request supplemental briefing if the Court's considering, say, that Lozada – Lozada's touching on 37 years next week to the day. It's been good law for 36 years and 51 weeks, so we would want to stop. It is post – he didn't say this, but it is post-Loper Bright. Although, to be fair, it's not interpreting a statute, but – Yeah, no, I think that's a point well taken. And just if I could briefly and quickly mention Matter of Milgar, which came out less recently in 2020. The facts of Matter of Milgar and the facts of this case do closely resemble one another. The Court has not spoken to Matter of Milgar except in four instances that I was able to find – I guess five cases technically, but four people – all unpublished. But Matter of Milgar advances the policy goals inherent in why you wish – why it's important to self-report. There's critical points, especially at pages 170 to 171. But Milgar does not reverse the holding that if ineffective assistance is obvious from the record, there aren't – there is not this requirement. I mean, I understand what you're saying, but then we also have Rojas Garcia. So, I mean, the two need to be reconciled, and I don't think you can read Milgar as broadly as you're reading it, which is to somehow say that you – if you have counsel that's continuing to represent you and there is no bar complaint, that resolves the question of Lozado. And so I apologize. I'm not trying to push to say Milgar has a sweeping, sweeping change. But the policy goals that are enunciated in Milgar at 170 and 171 about why self-reporting is so important, I think what this Court's spoken to is where if the three requirements of Lozado are not met line by line, as long as the policy goals of Lozado are still met, then there's wiggle room. In this case, the first requirement was not met. There was no affidavit from the client. We still haven't heard from the client in this case. And the matter of Lozado, echoed by Milgar, points that out. That's a requirement. The second requirement sort of dissolves away because you're supposed to – you give almost like notice and opportunity to respond. You make the accusation. That's missing because we don't have the affidavit. We allow response from private bar counsel. We have that insofar as the private bar counsel made a mea culpa. Then we have the third requirement, which is the state bar requirement. This is not the best – I'm going to admit this is not the best metaphor, but if there's a driver out there who continually gets into fender benders and rear-ends people over and over again and then jumps out of the car and says, it's my fault, it's my fault, but here, here's some money. Do we have to go through this process of exchanging numbers? You would agree with me, counsel, even based on the representations of counsel in court today, that this is a pretty clear and obvious case of ineffective assistance of counsel. That's pretty clear on the base of this case, right? Well, I would suspect if this went to a state bar, they would likely find that. But the idea is if you do not participate in the process, you thwart oversight. And so we ask, we say, look, you rear-ended me, but you're saying let's not get the insurance companies involved. Let's just – here's some money or my friend has a body shop. But no, no, no, we have to go through a process because it allows for oversight. And so the court in Melgar, even in Lozada, points out that oversight is necessary. That oversight is something that serves a purpose because how many times, how many rear-endings has this driver engaged in? We don't know because they're not participating in the process. If you participate – But let's – okay, let's assume that Lozada is still good law. Okay, let's start there. But even Lozada allows for some exceptions, and then it lets us go to the next step. And then there's prejudice has got to factor into this somehow. So I want to hear how – obviously, the first thing that you would just say is Lozada was not satisfied. End of story here, right? I mean, the easy button is there's no prejudice. The most straightforward answer is to say there's no prejudice, Matt. But, of course, the Petitioner's counsel did not satisfy arguably – And you're saying that because – You can keep answering because we have questions. You're saying that because you agree that the ineffective assistance of counsel – As you said, I think, yourself, as long as the policy goals are met, the strict compliance with the Lozada factors aren't required. And so here we have a pretty egregious case of ineffective assistance of counsel that's apparent from the record. So it's easier to go to prejudice. That's what – you can short-circuit the Lozada analysis by just reaching prejudice. That's what you are urging this Court to do. That is the most straightforward answer. The policy goals, though, of Lozada are also to prevent this from happening again, the same way that Melgar comes out and reemphasizes. Now, this Court hasn't spoken to it foursquare because in the other instances we found, Melgar – when Melgar was published, the acts by the parties had already taken place. So it wasn't like they're – then Melgar comes out. So in this case, Melgar's already out. Everyone's aware of Melgar, and Melgar's emphasizing this is why it's so important because we don't know how often this has happened if the person says, never mind the process, neglecting the ability to allow for oversight, which gets deprived of that. Okay, on the prejudice problem, your position, tell me, is who has the burden? The move-on. The move-on would be the petitioner here, right? They call them the respondent below. Yes, but the – if the petitioner has the burden, where in this record is there a showing of prejudice and how, if you were writing, if you could be judged for a day, if you were writing this, how would you – because I tend to – and I'm only speaking for myself right now. I haven't heard – I've heard that what petitioner's counsel did was wrong, and that makes everyone feel sorry for the petitioners in that sense. But I haven't heard anything about prejudice, and so I'm trying to figure out – that makes me – that gives judges pause all the time. If you think but for what the person did, they actually have a claim. So how do we – how do I look at this record? How do I weave through Lozada, prejudice, where does it fit in? I think one of the phrases I'd use if I were writing this issue is bad facts make bad law. And I would point out that the petitioners themselves still can metaphorically go to the state bar, participate in the process, obtain the oversight, leave that metaphorical building, carrying a document, bearing some sort of imprimatur from the state bar that says, yes, we pronounce this to be ineffective assistance to counsel, that the applicants can then go to the board and say, here we are. We now have something from the state bar that says this is ineffective assistance. That's the alternative they have because petitioners never responded to the personal dispute findings of the trial or fact below, that this was an unhappy marriage by an individual in Spain tormenting the petitioner, and that Petitioner Riley managed to escape Spain to go to El Salvador only when she looked on Facebook and saw the picture of the individual did she decide she should go. That's not a claim that the INA is really designed to help specifically with personal disputes. And to Your Honor's point about Kat, we have the same issue where, again, the agency looked at what was said to it in the Grava claim, in the affidavit, to say this is what my fears are, and it's Johnny. It's Johnny and an unknown man who I looked up on Facebook. The government doesn't answer to that. That doesn't demonstrate prejudice on top of bad facts making bad law. Any other questions? Thank you. I appreciate your time. All right. So I'm going to give you three minutes for rebuttal since we've had, obviously, a number of questions. And so it'll give you time to respond. Thank you, Your Honor. Yes, and like I said, in this case, Your Honor, I fell on my sword. This was my mistake. I've been practicing 25 years. I didn't want my clients to have to pay out to another attorney because it was my error, right? So I've been paying the filing fees. I've been doing all the work for them. Well, but you still got to convince me that your client has a path for relief, and I still haven't heard that. Right. I still haven't heard how in your petition down there you established any cap relief, and I still haven't heard that out of all of this that there's other than, you know, obviously everyone always wants a redo, but that's not what appeals are. Correct, Your Honor, and I think in this case because she was able to – she was credible with regard to her claims of being a victim of domestic violence and not being assisted by the government. I think that's enough to show that even – Not being assisted by what government? Well, she says that she – in her declaration, she says she wasn't able to escape the relationship, so there were no options for her to try and find other forms of – But the relationship's in Spain. Correct. And there's no abuse in – is it El Salvador? El Salvador. There's no abuse there. There's no reports to anyone there. So what evidence is there? I think the evidence was just the declaration, Your Honor, in this case. You know, she explained, I think, everything thoroughly in her declaration, so with that – So what you're saying, that based on the declaration, we should be able to say that she has shown that she has a path for relief? Yes, Your Honor. And you're falling on your sword because you didn't file a brief? That's correct. That's correct. It was my mistake. Is your client here today? No, she's not, but she knows I'm here today. And like I said, Your Honor, this is a mistake that I made. I mean, no one's perfect, and, you know, unfortunately, I could have easily just said, you know what, your case has been dismissed. But I was honest with her and said, look, I made a mistake. I'm going to file the appeal for you to see what we can do to help you. Well, okay, let's assume that you – you know, you're not denying that or whatever, but if she has no path to relief, what is my path as a court to give her relief? Right, I understand that, Your Honor. I think it's because, as I mentioned, she was the victim of domestic violence, and because of that, she suffered not only physical problems but also mental problems as well. Are you conceding that your client has no plausible claim for relief under CAT? I heard you say that in your opening remarks, and I want to understand from you whether you are conceding that there's no plausible claim for CAT relief. I mean, to be frank with the court, yes, I probably think so. Okay. Was there anything additional that you wanted to say to us? No, Your Honor, nothing else. Thank you. Any additional questions? Thank you, Your Honor. Okay, well, stay put because you'll be back. Thank you. Thank you. Thank you. You're switching. Is that what you – was that – Sorry, that was my – I don't want to speak in the chair. It wasn't that I didn't hear you. Yeah. I didn't speak. I know there's someone else coming. Thank you. Thank you. And you can stay and watch if you want. But you can't talk. No, not there. You go back to the audience. Okay, so the last matter, we've heard argument, and that stands submitted. I now would call Fuentes-Batista v. Pamela Bondi, 24-1309.
judges: CALLAHAN, DESAI, ALBA